JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Autumn Rubino

## DEFENDANTS
Lackawanna County, et al

**(b)** County of Residence of First Listed Plaintiff: **Dauphin**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Lackawanna**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Comerford Law
Curt M. Parkins, Esq.; Matthew T. Comerford, Esq.
204 Wyoming Avenue, Scranton, PA 18503; 570-880-0777

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. § 1983
Brief description of cause:
Civil Rights action for lack of Medical Treatment at Lackawanna County Prison

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $ 1,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE Mariani
DOCKET NUMBER 17-CV-1191

DATE: 06/06/2018
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

| IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF PENNSYLVANIA | |
|---|---|
| AUTUMN a/k/a BRIAN RUBINO : <br> PLAINTIFF : <br> V. : <br> : <br> LACKAWANNA COUNTY : <br> : <br> LACKAWANNA COUNTY PRISON BOARD : <br> : <br> TIM BETTI : <br> : <br> WARDEN BRIAN LANGAN : <br> : <br> CORRECTIONAL CARE, INC. : <br> a/k/a CORRECTIONAL CARE, P.C. : <br> : <br> EDWARD ZALOGA, D.O. : <br> : <br> JOHN/JANE DOE MEDICAL STAFF I-X : <br> DEFENDANTS : | CIVIL ACTION - LAW <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, comes Plaintiff, Autumn Rubino, by and through her Attorney, Comerford Law, LLC, who files this Complaint, averring as follows:

### Jurisdiction

1. This is a civil action seeking damages and injunctive relief against Defendants for acts constituting the deprivation of Plaintiff's rights secured under the 8th and 14th Amendments to the United States Constitution, under Federal Law 42 U.S.C. § 1983, providing for cause of action, and under Pennsylvania State Law.

2. While Plaintiff was subjected to pre-trial and post-trial detention in the Lackawanna County Prison, Defendants, acting individually and/or in concert, willfully, callously, recklessly, with gross negligence, and with deliberate indifference, acted and/or failed to act, under the Color of State Law, in a manner which proximately caused the violation of Plaintiff's right to be free from cruel and unusual punishment and right to due process, which, at all times hereinafter in this Complaint include the right to medical treatment and the right to have serious medical needs treated under 42 U.S.C. § 1983, and the 8th and 14th Amendments to the United States Constitution.

3. Original Federal Jurisdiction and Supplemental Jurisdiction over State Law claims are established under 28 U.S.C. §§ 1331, 1343, and 1367, under 42 U.S.C. § 1983.

1

4. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 because the factual basis for all claims stated herein occurred in the Middle District and because Plaintiff and Defendants reside in and/or maintain their principle places of business in the Middle District.

**Parties**

5. Plaintiff incorporates by reference paragraphs 1-4 of this Complaint as if fully set forth herein.

6. Plaintiff, Autumn Rubino, is an adult, competent individual who currently resides in Scranton, Pennsylvania.

7. Defendant, Lackawanna County ("Defendant County"), is a municipality organized by and through the Commonwealth of Pennsylvania that regulates and implements customs, policies, and practices, and that directs, manages, and controls the customs, policies, practices, and employees of Lackawanna County Prison ("the Prison") and Correctional Care, Inc.. At all relevant times, Defendant County was acting under the Color of State Law.

8. Defendant, Lackawanna County Prison Board ("Defendant Board"), is a government entity within and operating under Defendant County organized by and through the Commonwealth of Pennsylvania that regulates and implements customs, policies, and practices, and that directs, manages, and controls the customs, policies, practices, and employees of Lackawanna County Prison ("the Prison") and Correctional Care, Inc.. At all relevant times, Defendant Board was acting under the Color of State Law.

9. Individual Defendant, Warden Tim Betti ("Defendant Betti"), is the Warden of the Prison. At all times relevant herein, Defendant Betti was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Betti is being sued in his individual, supervisory, policymaking, and all other official capacities as Warden and Corrections Officer.

10. Individual Defendant, Deputy Warden Brian Langan ("Defendant Langan"), is Deputy Warden of the Prison. At all times relevant herein, Defendant Langan was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Langan is being sued in his individual, supervisory, and all other official capacities as Warden and Corrections Officer.

11. Defendant, Correctional Care, Inc. ("Defendant Contractor"), is a Business Corporation registered under the laws of the Commonwealth of Pennsylvania. At all times relevant herein, Defendant Contractor was under contract with Defendant County to provide medical services to inmates at the Prison. At all relevant

2

herein, Defendant Contractor was acting under the Command and Authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, contract, and/or practice of Defendant County. Defendant Contractor is being sued in its independent capacity as a Pennsylvania Corporation, its supervisory capacity as an employer, and as a policymaker and government actor, acting under Color of State Law.

12. Individual Defendant Edward Zaloga, D.O., ("Defendant Zaloga"), is a doctor of osteopathy, registered under the laws of the Commonwealth of Pennsylvania. Defendant Zaloga owns, operates, controls, maintains, and is President of Defendant Contractor. At all times relevant herein, Defendant Zaloga was acting under the Command and Authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, contract, and/or practice of Defendant County and Defendant Contractor. Defendant Zaloga is being sued in his individual capacity, his supervisory capacity as an employer, and as a policymaker government actor, acting under Color of State Law.

13. Individual Defendants, John/Jane Doe I-X Medical Staff ("John Doe Medical Defendants"), are and/or were Nurses, medical staff, and/or held other administrative positions, at Defendant Contractor and/or the Prison, employed by Defendant Contractor and/or County, and under the command and authority of Defendant County and Defendant Contractor. At all times relevant herein, John Doe Medical Defendants acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Defendant Contractor. John Doe Defendants are being sued in their individual, supervisory, and all other official capacities as employees of Defendant Contractor.

**Background Facts**

14. Plaintiff incorporates be reference paragraphs 1-13 of this Complaint as if set forth fully herein.

15. On or about December 15, 2009, Defendant County entered into a Comprehensive Health Services Agreement ("the Agreement") with Defendant Contractor for the provision of all medical treatment and services to inmates, detainees, and prisoners at the Prison.

16. In entering into this Agreement, Defendant Contractor voluntarily undertook to engage in a traditional government function in lieu of the government itself performing that function.

17. Under this Agreement, Defendant County specifically delegated its legal responsibility to provide medical treatment to these individuals, sufficient to pass Constitutional muster under the United States Constitution, to Defendant Contractor.

3

18. Under this Agreement, Defendant Contractor agreed to render services commensurate with then current levels of care being provided by Defendant County and to act in accordance with the customs and practices of Defendant County.

19. Under this Agreement, Defendant Contractor is obligated to provide outside hospital care, where required, to inmates, detainees, and prisoners.

20. Under this Agreement, Defendant Contractor must evaluate all inmates, detainees, and prisoners prior to being booked into the Prison, and must make appropriate accommodations or changes for inmates with preexisting medical conditions.

21. Under this Agreement Defendant Contractor is responsible for staffing the Prison with sufficient medical personnel at levels commensurate with prior staffing, and the Prison was responsible for screening Defendant Contractor's employees who would be working in the Prison.

22. Under this Agreement, Defendant County paid the costs of care, administrative expenses, and compensation to Defendant Contractor.

23. Under this Agreement, Defendant Contractor agreed to comply with all civil rights laws in effect and agreed to comply with all right-to-know laws.

24. This Agreement was scheduled to end on December 14, 2012, but on September 12, 2012, Defendant County and Defendant Contractor entered into an Amendment ("the Amendment") to the Agreement which extended the Agreement through December 14, 2017.

25. The Amendment specifically reaffirmed Defendant County's right to ask Defendant Contractor to use alternate providers of goods and services. This was a guise indicative of Defendant County and Defendant Contractors' policy and custom of using cheaper, ineffective, and dangerous care rather than care adequate to treat detainees' serious medical needs. This Amendment also permits Defendant Contractor to deny or limit care on a political basis, under the guise of the right to use alternative providers and/or to deny services.

26. Additionally, the nature of the bidding process through which the contract for medical care at the prison is awarded provides incentive for Defendant Contractor to deny services in order to keep cost low, which ensures that his the contract will continue to get renewed.

**Specific Conduct Against Plaintiff**

27. Plaintiff incorporates be reference paragraphs 1-26 of this Complaint as if set forth fully herein.

28. Plaintiff became incarcerated at the Prison on or about January 8, 2018.

29. Plaintiff was incarcerated for approximately four months and is no longer incarcerated.

30. Plaintiff is a female, who was born with male genitalia and assigned the gender of male and the name Brian Rubino at birth. Plaintiff now goes by Autumn Rubino.

31. Prior to her incarceration, Plaintiff's appearance and mannerisms were undoubtedly female; she wore, and continues to wear, her hair in feminine styles; and she had visible breasts.

32. Plaintiff has lived as and presented herself as a woman since approximately January 1, 2017.

33. Plaintiff is diagnosed with gender dysphoria. She was formally diagnosed by Susan Decker with gender dysphoria, and Lorraine Brock – a licensed medical provided – prescribed her Spirolactone, 50mg 2x/day, and estrogen, 1.5mg 1x/day, on July 20, 2017.

34. Gender dysphoria is a mental disorder under the American Psychiatric Association Diagnostic and Statistical Manuel, Fifth Edition, which manifests itself in serious, severe psychological distress. Symptoms can include anxiety, depression, suicidal ideations, and self-mutilation if left untreated.

35. Gender dysphoria is treated, in part, with hormone medication, which is a necessary medical treatment for those with untreated gender dysphoria, which constitutes a serious medical need.

36. Withdrawing hormone treatment from a patient already undergoing treatment may result in physical symptoms such as muscle wasting, high blood pressure, and neurological complications.

37. Plaintiff was prescribed hormone medications to treat her gender dysphoria since July 20, 2017.

38. Plaintiff continued to take this medicine uninterrupted until she was incarcerated in Lackawanna County Prison on January 8, 2018.

39. Upon entry into the Prison, Plaintiff filled out an intake form, part of which included questions regarding her medical situation.

40. Plaintiff completed this form, and she specifically indicated that she suffers from gender dysphoria and is in need of hormone treatment.

41. Plaintiff also represented this verbally to medical staff including Defendant Zaloga and John Doe Medical Defendants.

42. Upon intake to the Prison, Plaintiff, despite her request, was not provided with her medication. Defendant Zaloga and John Doe Medical Defendants specifically knew of Plaintiff's need, knew it was a serious medical need, and purposely denied her treatment.

43. Plaintiff has not been provided with the medication since despite constant and repeated requests for the same. Defendant Zaloga and John Doe Medical Defendants specifically knew of Plaintiff's need, knew it was a serious medical need, and purposely denied her treatment.

44. Plaintiff wrote to Defendants Betti and Langan as well as the Lackawanna County Commissioners, who with knowledge of the consequences and of Plaintiff's serious medical need, ignored Plaintiff's need, referring the case to medical and ignoring Plaintiff's repeated requests for help once medical denied her care.

45. Both Defendant Zaloga and John Doe Medical Defendants, in their capacities as medical care providers at Lackawanna County Prison, had and continue to have the authority to grant or deny medical care, to approve referral and consultation requests, and have the duty to supervise other medical staff and ensure the provision of adequate medical care to inmates.

46. The medically accepted and appropriate treatment for gender dysphoria includes numerous facets, including necessary hormone treatment.

47. There is no alternative treatment to hormone therapy for gender dysphoria.

48. The costs of hormone treatment are comparable to other types of treatment provided by Defendant Contractor to other inmates at the Prison.

49. The medical staff at Lackawanna County Prison, including Defendant Zaloga and John Doe Medical Defendants, knew since January 8, 2018, and continuing to present, that Plaintiff suffers from gender dysphoria and had been undergoing hormone treatment for over a year since being prescribed hormones in state prison.

50. Hormone treatment was medically necessary to treat Plaintiff's gender dysphoria, and Defendant Zaloga and John Doe Medical Defendants knew that this was medically necessary treatment.

51. Defendant Zaloga and John Doe Medical Defendants denied Plaintiff's requests for hormone treatment, including once via a denied grievance.

52. Defendant Zaloga and John Doe Medical Defendants knew Plaintiff was suffering both physically and psychologically due to their failure to provide hormone treatment.

53. The denial of hormone treatment to someone diagnosed with gender dysphoria is a gross departure from accepted medical standards.

54. As a result of being deprived of her hormone medication, Plaintiff has suffered and continues to suffer serious psychiatric and emotional trauma.

55. As a result of being deprived of her hormone medication, Plaintiff has suffered and continues to suffer serious physical trauma, including but not limited to the destruction and deformation of her breasts.

56. As a result of being deprived of her hormone medication, Plaintiff has suffered and continues to suffer from skin damage due to the reemergence of facial and other hair across her body.

57. As a result of being deprived of her hormone medication, Plaintiff's planned gender reassignment surgery to treat her gender dysphoria will be indefinitely delayed, causing severe psychological trauma and causing Plaintiff to remain trapped in a body incompatible with her gender.

58. During her entire time in the Prison Plaintiff's serious medical needs were willfully and deliberately ignored by Defendants, causing the damages complained of herein.

59. During this period of time, Defendant Zaloga and John Doe Medical Defendants, deviated from the standard or care by completely abandoning treatment of Plaintiff's gender dysphoria, causing all injuries described herein.

60. As the proximate result of the acts committed by the Defendants under the Color of State Law in violation of the United States Constitution and violations of Pennsylvania State Law, the Plaintiff suffered damages, not limited to, substantial pain, medical complications, physical deformation, mental anguish, as well as physical and psychological injury. The Plaintiff also suffered loss of future life experience, enjoyment, economic loss, and deprivation of the Plaintiff's Civil Rights.

**Policy Conduct**

61. Plaintiff incorporates paragraphs 1-60 of this Complaint as if fully set forth herein.

62. Neither Defendant County nor Defendant Contractor have a policy in place in regards to medical care for transgender inmates and inmates with gender dysphoria. This lack of policy constitutes deficient custom.

63. In an interview published in the Scranton Times Tribune on June 26, 2017, Joseph D'Arienzo, spokesman for Defendant County, confirmed that Lackawanna County does not have a policy pertaining to hormone treatment for transgender inmates.

64. The need for such a policy is obvious.

65. Defendant County and Defendant Contractor were also on notice of the need for such a policy due to the fact that those entities adopted a policy regarding sexual harassment and treatment of transgender inmates, but neglected to implement a policy or extend such policy regarding these inmates' unique medical needs.

66. Additionally, Defendant County and Defendant Contractor have been on notice of the need for such a policy for years prior to Plaintiff's incarceration.

67. Specifically, a female, born with male genitalia and assigned the gender of male and name Jeremy Owens at birth, was incarcerated in Lackawanna County Prison on the following dates:

    a. May 22, 2010, through May 24, 2010
    b. September 15, 2012
    c. October 26, 2012
    d. March 12, 2013, through March 25, 2014
    e. June 15, 2014, through July 17, 2014
    f. November 15, 2014, through December 16, 2014
    g. May 2, 2015, through May 4, 2015
    h. May 12, 2015, through August 6, 2015

68. All of these dates of incarceration preceded Plaintiff's current incarceration at the Prison.

69. During Owens' incarceration or prior thereto, this inmate was diagnosed with gender dysphoria, and Defendant County and Defendant Contractor knew, via Owens' complaints, of this condition.

70. During some period of her incarceration, Owens had female breasts, due to hormone treatment and/or surgery outside of the Prison. Owens held herself out to be, appeared to be, and acted female.

71. While in the Prison, this inmate made complaints regarding the unfair treatment she received due to being transgender and requested that accommodations be made and/or treatment be provided to her for her gender dysphoria. These requests specifically contained requests for appropriate medical treatment for gender dysphoria.

72. These complaints and requests were made to both Defendant County and Defendant Contractor and their agents, including Defendant Zaloga, Defendant Langan, and John Doe Medical Defendants.

73. Additionally, members of the Lackawanna County Court system, which include members of the Lackawanna County Prison Board, were recipients of the complaints and requests of this inmate via the Owen's involvement in the criminal justice system.

8

74. Both Defendant County and Defendant Contractors' policymakers, including, but not limited to Defendants Zaloga, O'Malley, Betti, and Langan, were aware of these complaints and requests.

75. Despite being on notice of this inmate's situation, no policy was instituted to provide transgender inmates adequate medical care or to delineate procedures regarding medical treatment for such inmates.

76. Following Owens, Sparkles Wilson, a transgender female with gender dysphoria given the name Steven Fritz at birth was housed at the Lackawanna County Prison in 2017.

77. Like Plaintiff, Wilson was denied her previously prescribed medication which had been validly prescribed and taken prior to entering the Prison.

78. This medication was identical to that prescribed to Rubino.

79. Wilson sued all of the Defendants listed in this suit and Defendants stipulated to the entry of a preliminary injunction requiring them to provide the meds to Wilson while in the Prison.

80. Defendants were, therefore, on notice of the requirement that they prescribe this medication.

81. Regardless, they willfully failed to give Plaintiff her prescribed medication.

82. Despite the fact that he should have learned his lesson the first time he was sued and faced with an injunction, he did not and continues to perpetrate the same poor behavior, fails to live up to the oath he took as a doctor, and acts with deliberate indifference to the rights of inmates at Lackawanna County Prison.

83. This warrants and requires punitive damages against Defendant Zaloga.

84. Additionally, Lackawanna County and its Commissioners, Patrick O'Malley, Jerry Notariani, and Laureen Cummings, and its Prison Board were on notice of the aforementioned facts regarding Wilson.

85. They were also on notice of numerous other lawsuits and factual circumstances in which Zaloga refused to provide common, decent, necessary medical treatment to inmates at Lackawanna County Prison.

86. Despite this O'Malley, Notariani, and Cummings, and the Prison Board all voted to approve and renew Zaloga's contract in November 2017, selecting him over other bidders despite his willful failure to provide care. This retention directly and proximately caused Plaintiff's injury.

9

87. Defendant Contractor and Defendant Zaloga employ a policy and custom of denying adequate and necessary medical treatment to inmates at the Prison in order to keep costs to Defendant County low, so that Defendant County regularly renews its contractor with Defendant Contractor and Defendant Zaloga to provide care at the Prison.

88. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of not providing adequate medical care for the serious medical needs of inmates, detainees, and prisoners. This custom has been documented by civil suits filed against Defendants, including those docketed in the Middle District to 3:16-CV-2143; 3:17-CV-0903; and 17 CV 1191. The facts in both of these cases occurred prior to Plaintiff's incarceration and served to place Defendants on notice of their defective custom/policy.

89. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of providing less than adequate treatment in favor of less-expensive treatment to, detainees, and prisoners, which is detrimental to the health of these individuals and indifferent to their serious medical needs.

90. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of not providing adequate prescription drugs and medical devices to inmates, detainees, and prisoners, and instead providing inadequate devices and prescriptions due to cost efficiencies which is detrimental to the health of these individuals and indifferent to their serious medical needs.

91. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of ignoring inmates', detainees', and prisoners' legitimate and necessary requests for serious medical attention.

92. Both Defendant Contractor and Defendant County have a policy of providing the absolute minimum of health care to inmates at the Prison for the sole purpose of maximizing profits of Defendant Contractor and/or having Defendant Contractor's contract to provide medical services at the Prison renewed.

93. Defendant Contractor and Defendant County have a policy of not making referrals to specialists outside of the Prison, even when such referrals are medically necessary due to serious medical needs.

94. Defendants Contractor and County had a policy of not evaluating medical complaints by inmates promptly or adequately.

95. Defendants Contractor and County had a policy of permitting nurses and other untrained workers, who were not doctors, to treat and diagnose patients unsupervised when that role should have been fulfilled by a trained Doctor.

96. Defendant Zaloga is the owner, operator, and President of Defendant Contractor, and the two treat each other as the same entity; therefore, Defendant Zaloga's actions and inactions constitute policy and custom of Defendant Contractor.

## Claims for Relief

### Count I

**Municipal Liability and Civil Rights Violations Caused By Policy as to Defendant County, Defendant Board, Defendant Betti, Defendant Langan, Defendant Contractor, and Defendant Zaloga**

**United States Constitution, Amendments VII and XIV; 42 U.S.C. §§ 1983**

97. Plaintiff incorporates by reference Paragraphs 1-96 of this Complaint as is fully set forth herein.

98. Defendants County, Board, Betti, Langan, Contractor and Zaloga ("Defendant Policy Makers") developed, implemented, approved, maintained, and/or failed to adopt or maintain, a number of customs, policies, and practices with deliberate indifference, which proximately caused a deprivation of Plaintiff's Constitutional Rights.

99. Through implementation of and/or failure to implement custom, policy, practice, ordinance, regulation and/or statements, Defendant Policy Makers, with deliberate indifference and callous disregard, caused harm to Plaintiff and similarly situated inmates.

100. The separate and/or conspired acts and/or omission of Defendant Policy Makers, and failure to supervise and failure to train, made willfully, callously, recklessly, with gross negligence, and/or with deliberate indifference, and made under the Color of State Law, proximately caused and/or facilitated the violations of Plaintiff's rights under the United States Constitution, Amendments VIII and XIV; 42 U.S.C. §§ 1983. Specifically, Plaintiff's Right to Due Process and Right to Be Free From Cruel and Unusual Punishment, both of which include the right to medical treatment for serous medical needs, were violated.

101. As a direct and proximate cause of the aforementioned acts and omissions of Defendant Policy Makers, Plaintiff suffered the injuries and damages set forth herein.

### Count II

**Individual Violations as to Defendant Zaloga, John Doe Medical Defendants, Defendant Betti, and Defendant Langan**

**United States Constitution, Amendments VII and XIV; 42 U.S.C. §§ 1983**

102. Plaintiff incorporates by reference Paragraphs 1-101 of this Complaint as if fully set forth herein.

103. Defendant Zaloga's, Betti's, Langan's, and John Doe Medical Defendants', aforementioned actions and lack of actions, taken under Color of State Law constitutes a violation of the United States Constitution, Amendments VIII and XIV; 42 U.S.C. §§ 1983. Specifically, Plaintiff's Right to Due Process and Right to Be Free From Cruel and Unusual Punishment, both of which include the right to medical treatment for serous medical needs, were violated.

104. It is clearly established law under the Eighth Amendment and Fourteenth Amendment that the intentional refusal to provide recognized, accepted, and necessary medical treatment constitutes deliberate indifference.

105. It is further clearly establishes that gender dysphoria is a serious medical need and that hormone treatment is a required treatment for that disorder.

106. It is equally clearly established that failure to intervene in the intentional deprivation of constitutional rights violates these Amendments.

107. The alleged actions and inactions specifically include conspiracy between the named Defendants and failure to intervene of Defendants Betti and Langan.

108. As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries and damages herein.

**Count III**

**Supplemental State Law Claim for Intentional Infliction of Emotional Distress, against Defendant Zaloga and John Doe Medical Defendants**

109. Plaintiff incorporates by reference Paragraphs 1-108 of this Complaint as if fully set forth herein.

110. The aforementioned acts and conduct of Defendant Zaloga and John Doe Medical Defendants constitute extreme and outrageous conduct that is beyond the bounds of conduct tolerated by a civilized society such that they violate basic concepts of human decency and shock the conscience of society, which caused severe emotional distress that has manifested in both mental and physical injuries that may be permanent.

111. As a direct and proximate cause of the foregoing, Plaintiff suffered the injuries described herein.

**Count IV**

## Supplemental State Law Claim for Civil Conspiracy Against All Individual Defendants

112. Plaintiff incorporates by reference Paragraphs 1-111 of this Complaint as if fully set forth herein.

113. All individual Defendants knowingly, maliciously, recklessly, and with gross negligence conspired to engage in the aforementioned Tort Claims and stated facts, whereby each Defendant acted in concert by agreement to cause the foreseeable harm and/or facilitate the harm through individual and/or separate acts and/or omissions.

114. As a direct and proximate cause of this conspiracy, Plaintiff suffered the injuries described herein.

## Jury Demand

115. Plaintiff incorporates by reference Paragraphs 1-114 of this Complaint as if fully set forth herein.

116. On all counts, facts, and claims asserted herein, Plaintiff demands a trial by jury.

## Prayer for Relief

Wherefore, Plaintiff demands judgment against Defendants on all above counts and specifically requests:

a. A permanent injunction mandating Defendants to immediately provide hormone treatment and all other necessary medical treatment to inmates at the Prison suffering from gender dysphoria.

b. Compensatory Damages in excess of $1,000,000.00

c. Punitive Damages in excess of $1,000,000.00

d. Attorneys Fees

e. Costs of brining suit and interest

f. Any other relief which the Court determines to be just and appropriate

Respectfully Submitted:

14

*Comerford Law*

_____
Matthew T. Comerford, Esq.
matt@comerfordparkins.com

_____
Curt M. Parkins, Esq.
curt@comerfordparkins.com
204 Wyoming Avenue
Scranton, PA 18503
Phone: 570-880-0777