UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AUTUMN (BRIAN) RUBINO, :
: CIVIL ACTION NO. 3:18-CV-1211
Plaintiff, :
: (JUDGE MARIANI)
v. :
:
LACKAWANNA COUNTY, et al., :
:
Defendants. :
:

# MEMORANDUM OPINION
## I. INTRODUCTION

Here the Court considers "Defendants', Correctional Care, Inc., and Edward Zaloga, D.O., Motion Pursuant to Fed. R. Civ. P. 11 to Preclude Physician Diagnosis of Gender Dysphoria" (Doc. 42). With this motion, Defendants Correctional Care, Inc., and Edward Zaloga, D.O. ("Moving Defedants") request that the Court issue an Order that no physician has diagnosed Plaintiff with gender dysphoria and preclude Plaintiff from presenting any evidence of any physician diagnosis of gender dysphoria. (Doc. 42 at 3; Doc. 42-1 at 1.)

The basis of this request is Plaintiff's representation in his "Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction" ("Emergency Motion") (Doc. 21) that the need for the administration of Estradioal and Spironolactone while incarcerated were supported by Plaintiff's "formal[] diagnosis [] by medical doctors as suffering from gender dysphoria" (Doc. 22 at 2) and his averment in the Emergency Motion that the "prescriptions and diagnoses were made by Joshua Fleetman, MD, a trained medical doctor licensed under the laws of the Commonwealth of Pennsylvania" (Doc. 21 ¶ 10). (Doc. 43 at

1-2.) Moving Defendants assert that this information contained in Plaintiff's Emergency Motion and supporting brief (Docs. 21, 22) is false because Dr. Fleetman testified at his May 20, 2019, deposition that he did not himself make a definitive diagnosis of gender dysphoria or conduct a full evaluation of Plaintiff but rather relied upon the evaluation and diagnosis of Licensed Professional Counselor Susan Decker. (Doc. 43 at 4.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 11 provides in pertinent part that:

> (b) **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11 further provides, that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an

appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The clear language of the Rule allows the Court discretion to decide whether to impose sanctions. See also Fed. R. Civ. P. 11(b), (c) advisory committee's note, 1993 amendment ("Whether a violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court...."). The Court also "has discretion to tailor sanctions to the particular facts of the case." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988). "The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities..., etc." Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment. "A district court's choice of deterrent is appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior." *Doering*, 857 F.2d at 194 (internal quotation omitted).

The goal of Rule 11 is correction of litigation abuse. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987). "Sanctions are to be applied only 'in the "exceptional circumstance" where a claim or motion is patently unmeritorious or frivolous.' " *Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 297 (3d Cir.2010) (quoting *Doering*, 857 F.2d at 194).

> The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes; 2)

3

> tend to spawn satellite litigation counter-productive to efficient disposition of
> cases; and 3) increase tensions among the litigating bar and between the
> bench and the bar.

*Doering*, 857 F.2d at 194 (internal citations and quotation marks omitted).

To comply with the requirements of Rule 11(b), "counsel must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (internal quotation omitted). "In scrutinizing a filed paper against these requirements, courts must apply an objective standard of reasonableness under the circumstances. The wisdom of hindsight should be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* (internal citations and quotation omitted). As stated in *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988), "[t]he standard for testing conduct under Rule 11 is reasonableness under the circumstances." The Third Circuit and the Advisory Committee Notes to Rule 11 have set forth certain factors useful in determining whether an attorney's conduct has violated Rule 11. Those factors include:

> [H]ow much time for investigation was available to the signer; whether he had
> to rely on a client for information as to the facts underlying the pleading, motion,
> or other paper; whether the pleading, motion, or other paper was based on a
> plausible view of the law; [ ] whether he depended on forwarding counsel or
> another member of the bar; [and] whether [one] is in a position to know or
> acquire the relevant factual details.

Fed. R. Civ. P. 11 Advisory Committee Notes to 1983 Amendment; *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991). The burden of showing that

4

sanctions are warranted rests with the moving party. *Gary v. Braddock Cemetery & Consol Energy*, 334 F. App'x 465, 467 (3d Cir. 2009); *Vilkofsky v. Specialized Loan Servicing, LLC*, Civ. A. No. 2:16-CV-01291-NBF, 2018 WL 2937693, at *9 (W.D. Pa. June 12, 2018) ("to establish a Rule 11 violation the burden of proof and persuasion rests on the party moving for sanctions") (internal quotation omitted).

## III. ANALYSIS

Moving Defendants conclude that the inaccuracies identified in Plaintiff's Emergency Motion and supporting brief regarding Dr. Fleetman's diagnosis of gender dysphoria and his prescribing of related drugs warrant sanctions because they evidence a lack of the pre-filing inquiry required under Rule 11 (Doc. 43 at 7 (citing *Live v. Tubb Stone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)), and the inaccuracies show that the filings do not satisfy the applicable reasonable attorney standard, i.e., "whether a reasonable attorney would have acted in a particular way" (*id.* (citing *Griggs v. BIC Corp.*, 844 F. Supp. 190 (M.D. Pa. 1994)). Plaintiff responds that sanctions are not warranted because the averments found objectionable were supported by the medical records and depositions. (Doc. 44 at 2.) The Court concludes that Moving Defendants have not satisfied their burden of showing that Rule 11 was violated such that sanctions would be properly imposed.

Plaintiff avers that the circumstances of this case show that sanctions are not warranted as the record

> clearly indicates that Dr. Fleetman saw Plaintiff, assessed an Endocrine Disorder, and prescribed hormone medications to Plaintiff. First of all, the Motion clearly alleges that Dr. Fleetman diagnoses an Endocrine Disorder. This

5

is specifically taken from the medical records, providing a reasonable basis for Plaintiff to allege it. The medical records also specifically show a diagnosis of gender dysphoria. See Exhibit A at ALDER21 – ALDER22; see also Exhibit C at 5, p. 17 (Gender Identity Disorder is the same thing as Gender Dysphoria).

It was not until Dr. Fleetman's deposition on May 20, 2019, that the parties all learned that Dr. Fleetman did not make the initial diagnosis of gender dysphoria; however, he did adopt and treat the diagnosis. Plaintiff had a reasonable basis to allege it based on the medical records diagnosing gender dysphoria where Dr. Fleetman was the treating physician. Dr. Fleetman confirmed this. Dr. Fleetman testified that he treated Plaintiff and that his predecessor at his clinic, Nurse Practitioner Bock, was the person who made the actual diagnosis of gender dysphoria and that Ms. Bock was qualified to make that diagnosis. Exhibit B at 16, p. 59-60. Dr. Fleetman relied on her diagnosis. Exhibit B at 16, 58-59. He also testified that the hormone medication prescribed to Plaintiff was medically necessary. Exhibit B at 16, pp. 58-59. Therefore, based on this and the medical record, Plaintiff' [sic] averment was accurate, and Plaintiff had a reasonable basis at the time for alleging it.

Ms. Bock, a certified nurse practitioner, was deposed on July 12, 2019. See Exhibit C. Nurse practitioners are qualified to make the diagnosis of gender dysphoria. Exhibit C at 3-4, pp. 9-10; p. 13, pp. 46-49. Ms. Bock actually diagnosed Plaintiff with gender dysphoria. Exhibit C at 6, pp. 18-19; at 7, p. 2; at 7, pp. 27-28.

(Doc. 44 at 2-3 (citing Docs. 44-1, 44-2, 44-3.)

On the basis of this information of record, Plaintiff concludes that the

representation that Dr. Fleetman made the diagnosis was reasonably based on the fact available at the time it was made. It was taken directly from the medical record. No one was aware that a nurse practitioner, rather than a physician, made the diagnosis until the two aforementioned depositions were taken in this case. Furthermore, this distinction is not relevant. As both deponents testified, a nurse practitioner is qualified in making the diagnoses and doctors rely on these diagnoses in rendering treatment. While Defendant's complaint [sic] about counsel's failure to file a diagnosis with the court, the sole reason for that is that the [sic] we were unable to procure additional records, other than the alder records, or depositions until later in the case. Furthermore, the emergency nature of the motion began to fade as it became expected that Plaintiff would be released from the prison.

6

(*Id.* at 3.)

Judging the conduct of Plaintiff's counsel by what was reasonable to believe at the time the Emergency Motion in this matter was submitted, the Court finds that Moving Defendants have presented no compelling factual basis on which to find that Plaintiff and Plaintiff's counsel knew or should have known that their representations regarding Dr. Fleetman's diagnosis and medication prescriptions were inaccurate. While the Court does not condone Plaintiff's counsel's dilatory conduct related to the submission of material to the Court and Defendants (*see, e.g.*, Doc. 29 at 1-2), under the specific circumstances of the averments made regarding Plaintiff's gender dysphoria diagnosis in the Emergency Motion and supporting brief (Docs. 21-22) and the related information contained in medical records and relevant depositions (Docs. 44-1, 44-2, 44-3), the Court concludes that Moving Defendants have not shown that a reasonable attorney would not have included the information they find objectionable in motion filings. This is so given that Dr. Fleetman was Plaintiff's treating physician and the records contained a diagnosis of gender dysphoria for which Dr. Fleetman continued to prescribe Estradioal and Spironolactone which had originally been prescribed by a competent practitioner. (*See* Doc. 44 at 2-3 (citations omitted).) No evidence suggests that Plaintiff's counsel knew at the time of filing the Emergency Motion that Plaintiff's treating physician had not made the original diagnosis of the condition at issue or been the original prescriber of the medications at issue. Further, no evidence suggests that filing of the Emergency Motion and inclusion of information

7

related to Dr. Fleetman should be construed as litigation abuse, see *Gaiardo,* 835 F.2d at 483, or that the Emergency Motion (Doc. 21), though ultimately denied without prejudice (Doc. 29), was "patently unmeritorious or frivolous," *Ario,* 618 F.3d at 297. This conclusion is bolstered by the fact that Moving Defendants did not file a reply brief, and, therefore, they did not counter the assertions contained in Plaintiff's brief regarding Dr. Fleetman's treatment of Plaintiff, his prescriptions for the medications at issue, and Nurse Practitioner Bock's diagnosis upon which Dr. Fleetman relied (Doc. 44 at 2-3). Thus, Moving Defendants pending Motion (Doc. 42) is properly denied.

## IV. CONCLUSION

For the reasons discussed above, Defendants', Correctional Care, Inc., and Edward Zaloga, D.O., Motion Pursuant to Fed. R. Civ. P. 11 to Preclude Physician Diagnosis of Gender Dysphoria (Doc. 42) will be denied. An appropriate Order is filed simultaneously with this Memorandum Opinion.

_____
Robert D. Mariani
United States District Judge